UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

EARL JOHNSON,

           Plaintiff,

v.                                        Civil Action No. 2:25-cv-432

ERIC MILLER,

           Defendant.

### AMENDED[1] OPINION AND ORDER

This action to enforce a promissory note for lost investments allegedly made in violation of the Securities Exchange Act is before the court on Plaintiff Earl Johnson's Motion for Partial Judgment on the Pleadings, (ECF No. 14). Plaintiff claims that Defendant Eric Miller was not a registered broker with the United States Securities Exchange Commission ("SEC") or the Financial Industry Regulatory Authority ("FINRA") when Miller entered into an investment contract with him, and that Defendant failed to make any payments to him under an executed promissory note between the two parties. Mem. Supp. Pl.'s Mot. Partial J. Pleadings ("Pl.'s Mem.") (ECF No. 15, at 1-2); see also Compl. ¶¶ 42-51, 58-61 (ECF No. 1, at 7-9). Because Defendant failed to meaningfully dispute allegations, the facts remain undisputed and Plaintiff argues he is entitled to judgement on the pleadings for Miller's alleged violation of 15 U.S.C. § 78o(a)(1) in Count I of the Complaint and Miller's breach of the promissory note alleged in Count III of the Complaint. Id. at 2. Plaintiff filed a request for a hearing regarding evidence of his attorney's fees accrued in this matter, (ECF No. 16). For the reasons outlined below, the court

---

[1] This Opinion and Order is amended only to correct the year of the parties' due dates as outlined in the Section IV from 2025 to 2026.

1

GRANTS Plaintiff's Motion for Partial Judgment on the Pleadings, (ECF No. 14), DENIES Plaintiff's request for a hearing and instead DIRECTS Plaintiff to submit supplemental briefing regarding the issue of attorney's fees.

## I. BACKGROUND

In a July 2021 meeting, Defendant Eric Miller discussed an investment opportunity with Plaintiff Earl Johnson where "Johnson could earn upwards of 200% returns on his investment" into Miller's algorithmic day trading model that pooled investment funds from multiple investors into a single trading account. Compl. ¶¶ 7-13 (ECF No. 1, at 2-3). Miller agreed to pay all capital gains taxes levied on his day trading profits and to review with Johnson twice a month the account status, market conditions, completed trades, and profit and loss statements. Id. ¶¶ 13-14 (ECF No. 1, at 3). In return, Miller requested a $1,250 non-refundable fee and 50% of Johnson's earned profits as compensation for his services. Id. ¶ 15. Given these proposed terms and Miller's representations about the track record of his algorithmic day trading model, Johnson invested $100,000 with Miller. Id. ¶¶ 16, 19, 21 (ECF No. 1, at 3-4).

Although Miller made monthly $1,000 payments to Johnson based on his "profits" for five months, he eventually stopped providing payments in or around January or February of 2022. Id. ¶¶ 22-24 (ECF No. 1, at 4). Over a year after receiving no additional payments as "returns" on his investment, Johnson requested Miller to return $9,000 of his invested funds. Id. ¶ 26. In response, Miller provided Johnson only $3,000 and stated he was unable to obtain the remaining $6,000 because there was allegedly a "freeze" on the investment account that he was working to resolve. Id. ¶ 28. Johnson again demanded that Miller return his investment, this time in its entirety, but Miller stated he would not be able to return the full investment until December 2023 or latest July 2024. Id. ¶¶ 29-30 (ECF No. 1, at 5). Miller subsequently sent Johnson a letter stating, "SG

Capital will fully return his initial investment of one hundred thousand USD on or before January 26, 2024." Compl. Ex. 1 (ECF No. 1-1).

Upon learning that other investors demanded a full reimbursement and received signed promissory notes from Miller, Johnson contacted Miller to execute a promissory note that obligated Miller to pay a total of $150,000 in twelve consecutive monthly installments of $12,500 commencing October 1, 2024. Compl. Ex. 2 ("Promissory Note") (ECF No. 1-2); Compl. ¶ 36 (ECF No. 1, at 6). Under the promissory note, default in payment that is not cured within five days of a written notice results in immediate payment of the entire balance. Promissory Note (ECF No. 1-2, at 2). Any untimely payments also result in a late charge equaling 12% of each payment delayed ten or more days. Id. On February 13, 2025, Johnson sent Miller a written notice of default, demanding payment within the five allotted days to cure default. Compl. Ex. 3 (ECF No. 1-3). To date, Miller has not returned Johnson's investment or made any payments towards the promissory note.

On July 15, 2025, Johnson filed the present action. Compl. (ECF No. 1). Relevant to the matter now before the court are Counts I and III of Plaintiff's Complaint.[2] In Count I of his Complaint, Johnson argues that Miller violated the Securities Exchange Act of 1934 and implementing regulations of the SEC by selling Johnson securities without registering as a broker with the SEC and FINRA. Compl. ¶¶ 42-44, 47-51 (ECF No. 1, at 7-8). In Count III, Johnson argues Miller breached an executed promissory note between both parties by failing to make any of his obligatory $12,500 monthly payments under the note. Id. ¶¶ 58-61 (ECF No. 1, at 9).

---

[2] Johnson also believes he was the victim of a Ponzi Scheme, which serves as the basis for part of his claims in Count I for securities fraud, Count II for common law fraud, and Count IV for conversion. Compl. ¶¶ 45-46, 52-57, 62-67 (ECF No. 1, at 7-10). However, Miller disputes that his day trading algorithm was a Ponzi Scheme. Answer (ECF No. 8, at 1). As such, Johnson concedes he "cannot plausibly move for judgment on the pleadings to the extent his claims rely on his allegation that Miller ran a Ponzi Scheme." Pl.'s Mem. (ECF No. 15, at 1). Accordingly, those counts of the Complaint are not relevant to the matters addressed in this Opinion and Order.

3

Miller's answer to the Complaint is essentially an apology letter where he takes "full responsibility" for the money he has lost in the markets and expresses his intention to pay back Plaintiff with interest. Answer (ECF No. 8, at 1). Although he takes full responsibility, he denies that his trading algorithm was a Ponzi scheme but rather argues his loss of money was the result of market change for the worse. Id. Regardless, Miller does not dispute any of the material facts alleged under Count I and III. See id.

On November 25, 2025, Plaintiff filed a Motion for Partial Judgment on the Pleadings, (ECF No. 14). Plaintiff requests the court enter partial judgment against Defendant on Count I and complete judgment against Defendant on Count III of his Complaint, awarding Johnson damages in the amount of $168,000[3] and post-judgment interest at the statutory rate provided by 28 U.S.C. § 1961.[4] Pl.'s Mot. Partial J. Pleadings (ECF No. 14). Plaintiff also asks the court to award him reasonable attorney fees in an amount determined at a later hearing. Id. He argues that partial judgment on Count I and complete judgement on Count III are warranted because "Miller [did] not dispute any of the material facts that establish his liability pursuant to those claims." Pl.'s Mem. (ECF No. 15, at 7-13).

## II.   STANDARD OF REVIEW

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is "assessed under the same standard

---

[3] Under the promissory note, Defendant owes Plaintiff a principal sum of $150,000 and a late fee equal to 12% of each monthly $12,500 payment that is delayed for ten or more days. Promissory Note (ECF No. 1-2, at 1-2). Here, in addition to the $150,000 principal, Plaintiff alleges that Defendant is liable to Johnson for late fees in the amount of $18,000 because Defendant was late to make every monthly payment under the promissory note. Pl.'s Mem. (ECF No. 15, at 12).

[4] Under 28 U.S.C § 1961, a uniform federal rate of post-judgment interest applies to "any money judgment in a civil case recovered in district court." 28 U.S.C. § 1961(a). The interest rate under this statute is "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." Id.

4

that applies to a Rule 12(b)(6) motion." Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)); see also Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002) (stating that in a Rule 12(c) motion, all facts asserted in the complaint must be taken as true and all reasonable factual inferences must be drawn in favor of the nonmoving party). When reviewing a Rule 12(c) motion, however, a court may consider all pleadings, including answers and attached exhibits, instead of reviewing only the complaint. See Seneca Ins. Co. v. Shipping Boxes LLC, 30 F. Supp. 3d 506, 510 (E.D. Va. 2014); Mendenhall v. Hanesbrands, Inc., 856 F. Supp. 2d 717, 724 (M.D.N.C. 2012). Rule 12(c) allows a court to take the answer's factual allegations as true to the extent the allegations have not been denied or do not conflict with the factual allegations in the complaint. Mendenhall, 856 F. Supp. 2d at 724. Under Rule 12(c), a court may consider documents incorporated by reference without converting the motion to summary judgment if the documents are central to the claim and not in dispute. Id. A court shall grant a motion for judgment on the pleadings under Rule 12(c) when the "movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Nationwide Gen. Ins. Co.v. Staples, 626 F. Supp. 3d 899, 904 (E.D. Va. 2022); Quality Props. Asset Mgmt. Co. v. Trump Va. Acquisitions, LLC, No. 3:11-cv-00053, 2012 WL 3542527, at *2 (W.D. Va. Aug. 16, 2012) (citing O'Ryan v. Dehler Mfg. Co., Inc., 99 F. Supp. 2d 714, 718 (E.D. Va. 2000)).

### III.  ANALYSIS

**A.  Plaintiff Is Entitled to Partial Judgment on Count I of his Complaint**

Under the relevant provision of the Securities Exchange Act at issue here—15 U.S.C. § 78o(a)(1), sometimes also referred to as Section 15(a)(1) of the 1934 Act—it is "unlawful for any broker ... to make use of the mails or any means or instrumentality of interstate commerce to

effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security ... unless such broker or dealer is registered [with the SEC] in accordance with subsection (b) of this section." 15 U.S.C. § 78o(a)(1)(B). Because FINRA is "the only registered national securities association in the United States," licensure with FINRA is also required. Black v. SEC, 125 F.4th 541, 543 (4th Cir. 2025); see also 15 U.S.C. § 78o(b)(1)(B). Violators of the requisite registration requirement who continue to effect securities transactions or solicit investments are held strictly liable. See, e.g., SEC v. Martino, 255 F. Supp. 2d 268, 283 (S.D.N.Y. 2003) ("The Commission need not prove the broker's scienter to establish a violation of Section 15(a)."); SEC v. Nat'l Exec. Planners, Ltd., 503 F. Supp. 1066, 1073 (M.D.N.C. 1980) ("The statute in question contains no language from which a scienter requirement may be derived.").

To find a defendant in violation of 15 U.S.C. § 78o(a)(1), the defendant must have acted as a "broker"—defined as "any person engaged in the business of effecting transactions in securities for the account of others"—for the securities transaction at issue. 15 U.S.C. § 78c(a)(4)(A). Courts consider, among other factors, whether a defendant received commissions as opposed to a salary, sold securities of other issuers, and gave advice regarding the merits of the investment at issue, to determine the defendant's broker status. See SEC v. Dowdell, No. 3:01-cv-00116, 2002 WL 424595, at *11 (W.D. Va. Mar. 14, 2002) (citing SEC v. Hansen, No. 83 Civ. 3692, 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984)). Ultimately, the inquiry is whether the defendant had a "certain regularity of participation in securities transactions at key points in the chain of distribution." Id. (quoting Massachusetts Fin. Servs., Inc. v. Securities Inv. Protection Corp., 411 F. Supp. 411, 415 (D. Mass. 1976)). In addition to a defendant's "broker" status, the defendant must also have effected transactions in or induced or attempted to induce the purchase of any security," which can include an "investment contract," defined as "a contract, transaction

or scheme whereby a person invests his money in a common enterprise and is led to expect profits . . . from the efforts of the promoter or a third party." 15 U.S.C. §§ § 78o(a)(1), 78c(a)(10); Robinson v. Glynn, 349 F.3d 166, 170 (4th Cir. 2003) (quoting SEC v. W.J. Howey, Co., 328 U.S. 293, 298-99 (1946)).

Here, Miller was a "broker"—not registered with the SEC or FINRA—who "effect[uated] transactions in securities," which in this case was an investment contract with Johnson. See 15 U.S.C. §§ 78o(a)(1), 78c(a)(4)(A), (10). After the meeting in July 2021, Miller acted as a broker when he induced Johnson into purchasing securities by investing $100,000 in Miller's day trading algorithm model and entering into an agreement where Miller would receive 50% of Johnson's trading returns as commission and $1,250 as an upfront fee for his services. See SEC v. Dowdell, No. 3:01-cv-00116, 2002 WL 424595, at *11 (W.D. Va. Mar. 14, 2002) (citing SEC v. Hansen, No. 83 Civ. 3692, 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984)). Additionally, Miller lost Johnson's money in the market after assuring him that his returns would exceed 200%. See id. Miller did not refute any of these factual allegations. Thus, there are no material issues of fact that need to be resolved because it is undisputed that Miller induced Johnson to enter a "contract, transaction or scheme whereby [Johnson invested] his money in a common enterprise and [was] led to expect profits ... from the efforts" of Miller. See Glynn, 349 F.3d at 170 (4th Cir. 2003) (quoting W.J. Howey, Co., 328 U.S. at 298-99). Accordingly, Plaintiff is entitled to partial judgment on this count of his Complaint. See Nationwide Gen. Ins. Co.v. Staples, 626 F. Supp. 3d 899, 904 (E.D. Va. 2022); Quality Props. Asset Mgmt. Co. v. Trump Va. Acquisitions, LLC, No. 3:11-cv-00053, 2012 WL 3542527, at *2 (W.D. Va. Aug. 16, 2012).

**B.    Plaintiff Is Entitled to Complete Judgment on Count III of his Complaint**

Under Virginia Code § 8.3A-104, a promissory note is a "negotiable instrument" defined

7

as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order," that is payable at a defined time. Va. Code § 8.3A-104. "A civil action may be maintained upon any note or writing by which there is a promise, undertaking, or obligation to pay money," so long as the note is signed by the party to be charged or its agent. Va. Code § 8.01-27. Signatures on negotiable instruments are presumed valid, unless denied in the pleadings. Va. Code § 8.3A-308. The statute of limitations to enforce obligations on any note is six years from the date payments are due. Va. Code § 8.3A-118. A breach of a promissory note is generally treated as a breach of contract claim. Premier Bank, Inc. v. Tech. Res., Inc., No. 1:13-cv-340, 2013 WL 6834380, at *5 (E.D. Va. Dec. 23, 2013). To succeed on a claim for breach of a promissory note under Virginia law, Plaintiff must prove the following elements for a breach of contract claim (1) a legal obligation of Defendant to the Plaintiff; (2) a violation or breach of that obligation; and (3) resulting damage to the Plaintiff. Filak v. George, 594 S.E.2d 610, 614 (2004); Caudill v. Wise Rambler, 168 S.E.2d 257, 259 (1969).

The promissory note here was executed by Miller on August 21, 2024. Compl. Ex. 2 (ECF No. 1-2). Miller was required to pay the $150,000 principal of the note in twelve monthly installments of $12,500 starting October 1, 2024. Id. at 1. Section three of the promissory note states that Johnson is entitled to the entire balance of the principal when there is a default in payment of the principal that is not cured within five days. Id. at 2. Section four of the promissory note states that "[i]f any payments are not timely made, [Miller] shall also pay to [Johnson] a late charge equal to 12% of each payment due for Ten (10) or more days." Id. Additionally, Miller agreed that Johnson would be entitled to an award of reasonable attorney fees and costs if Johnson had to enforce the note in any judicial proceedings, such as the one before the court today. Id. Because Miller does not dispute the promissory note, concedes he signed it, but has not made a

single payment under the note, there are no material issues of fact that need to be resolved to enforce the breached promissory note. Accordingly, Plaintiff is entitled to complete judgment on this count of his Complaint and Miller owes Johnson the entire principal amount of $150,000 and late fees in the amount of $18,000. See Nationwide Gen. Ins. Co.v. Staples, 626 F. Supp. 3d 899, 904 (E.D. Va. 2022); Quality Props. Asset Mgmt. Co. v. Trump Va. Acquisitions, LLC, No. 3:11-cv-00053, 2012 WL 3542527, at *2 (W.D. Va. Aug. 16, 2012).

### IV.   CONCLUSION

For the foregoing reasons, the court GRANTS the Motion for Partial Judgment on the Pleadings, (ECF No. 14), and will ENTER judgment in the amount of $168,000 plus post-judgment interest at the statutory rate provided by 28 U.S.C. §1961. With respect to the issue of attorney's fees, the court DENIES Plaintiff's request for a hearing, (ECF No. 16), and DIRECTS Plaintiff to submit supplemental briefing with appropriate documentary evidence regarding attorney's fees by February 4, 2026. Defendant may respond to Plaintiff's request for attorney's fees by February 18, 2026. The court will hold a hearing if additional information is needed or otherwise will issue an order fixing the amount of fees due and entering final judgment.

IT IS SO ORDERED.

/s/ Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
January 28, 2026